BRYAN A. KOHM (CSB No. 233276)
bkohm@fenwick.com
CHRISTOPHER L. LARSON (CSB No. 308247)
clarson@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

JONATHAN T. MCMICHAEL (CSB No. 304737)
jmcmichael@fenwick.com
FENWICK & WEST LLP
1191 Second Avenue, 10th Floor
Seattle, WA 98101
Telephone: 206.389.4510
Facsimile: 206.389.4511

CRYSTAL NWANERI (CSB No. 318955)
cnwaneri@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

Attorneys for Defendant
SPOTIFY USA INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| DATA SCAPE LIMITED,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>SPOTIFY USA INC., AND SPOTIFY TECHNOLOGY S.A.,<br><br>　　　　　　Defendant. | Case No.: 2:19-cv-04367-PSG-SK<br><br>**SPOTIFY USA INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**<br><br>Date:　　August 26, 2019<br>Time:　　1:30 p.m.<br>Judge:　　Philip S. Gutierrez<br><br>**JURY TRIAL DEMANDED** |

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 26, 2019, at 1:30 p.m., or as soon thereafter as counsel may be heard, defendant Spotify USA Inc. ("Spotify") will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss this case with prejudice for failure to state a claim. Dismissal is warranted because the claims of all asserted patents are directed to patent-ineligible subject matter, and therefore are invalid.

This Motion is based on this Notice and supporting Memorandum of Points and Authorities, all opposition and reply papers thereto, the argument of counsel, and any other evidence that may be presented at the hearing on this matter.

This Motion is made following the conference of counsel for Spotify and counsel for Data Scape Limited ("Data Scape") pursuant to Local Rule 7-3. Counsel for Spotify conferred with counsel for Data Scape on June 28, 2019 regarding the relief sought in this Motion. Data Scape opposes the Motion.

Dated: July 9, 2019

Respectfully submitted,

FENWICK & WEST LLP


By: _/s/ Bryan A. Kohm_
Bryan A. Kohm

Attorneys for Defendant
SPOTIFY USA INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................... 1

II.     BACKGROUND ................................................................................. 2

III.    LEGAL STANDARD .......................................................................... 5

IV.     ARGUMENT ...................................................................................... 6

    A.   The Asserted Patents Claim an Abstract Idea and Nothing
         More ........................................................................................ 6

        1.   Claim 1 of the '675 Patent is Nearly Identical to
             Claims Invalidated in *Western Digital* and Relates to
             the Same Abstract Idea .................................................. 7

        2.   Claim 1 of the '675 Patent is Representative ......................... 11

        3.   Courts Routinely Invalidate Patents Claiming Similar
             Abstract Ideas .............................................................. 12

    B.   The Asserted Patents Add No Inventive Concept to the
         Abstract Idea ......................................................................... 15

        1.   The Independent Claims of the '675 Patent ........................... 16

        2.   The Independent Claims of the '112 Patent ........................... 17

        3.   The Independent Claims of the '614 Patent ........................... 18

    C.   The Dependent Claims of the Asserted Patents are also
         Invalid ................................................................................... 18

    D.   Data Scape's Attempt to Allege Facts to Overcome Section
         101 Fails ................................................................................ 22

V.      CONCLUSION ................................................................................. 24

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
882 F.3d 1121 (Fed. Cir. 2018) ................................................................. 6, 17, 23

*Affinity Labs of Texas, LLC v. Amazon.com, Inc.*,
838 F.3d 1266 (Fed. Cir. 2016) ......................................................................*passim*

*Affinity Labs of Texas, LLC v. DirecTV, LLC*,
838 F.3d 1253 (Fed. Cir. 2016) ..............................................................9, 11, 12, 18

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l.*,
134 S. Ct. 2347 (2014) ...................................................................................*passim*

*Apple, Inc. v. Ameranth, Inc.*,
842 F.3d 1229 (Fed. Cir. 2016) ................................................................... 15, 22

*Aspex Eyewear, Inc. v. Zenni Optical Inc.*,
713 F.3d 1377 (Fed. Cir. 2013) ............................................................................ 8

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
133 S. Ct. 2107 (2013) ......................................................................................... 5

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018) ..................................................................... 6, 15

*Bilski v. Kappos*,
561 U.S. 593 (2010) ...................................................................................... 6, 22

*BSG Tech LLC v. BuySeasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018) ..................................................................... 6, 12

*Burnett v. Panasonic Corp.*,
741 Fed. Appx. 777 (Fed. Cir. 2018) ................................................................. 22

*ChargePoint, Inc. v. SemaConnect, Inc.*,
No. 2018-1739, slip op. (Fed. Cir. Mar. 28, 2019) ....................................*passim*

*Content Extraction and Transmission, LLC, v. Wells Fargo Bank*,
776 F.3d 1343 (Fed. Cir. 2014) .......................................................................... 11

*Data Engine Techs. v. Google LLC*,
906 F.3d 999 (Fed. Cir. 2018) ........................................................................ 6, 8

*Data Scape Ltd. v. Western Digital Corp.*,
No. 18-cv-2285 (C.D. Cal.) .............................................................................*passim*

*Dealertrack, Inc. v. Huber*,
674 F.3d 1315 (Fed. Cir. 2012) ......................................................................... 17

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Elec. Power Grp. v. Alsom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) ...................................................15, 16, 22

*Epic IP LLC v. Backblaze, Inc.*,
  351 F. Supp. 3d 733 (D. Del. 2018) ............................................14, 16, 23

*Genetic Techs. Ltd. v. Merial L.L.C.*,
  818 F.3d 1369 (Fed. Cir. 2016) ...........................................................15, 22

*Glasswall Sols. Ltd. v. Clearswift Ltd.*,
  No. 2018-1407, 2018 WL 6720014 (Fed. Cir. Dec. 20, 2018) ..............15, 23, 24

*Great Plains Trust Co. v. Union Pac. R.R. Co.*,
  492 F.3d 986 (9th Cir. 2009) .................................................................10

*In re TLI Commc'ns LLC Patent Litig.*,
  823 F.3d 607 (Fed. Cir. 2016) ..........................................5, 12, 13, 16

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
  792 F.3d 1363 (Fed. Cir. 2015) .............................................................11

*Internet Patents Corp. v. Active Network, Inc.*,
  790 F.3d 1343 (Fed. Cir. 2015) .............................................................22

*Interval Licensing LLC v. AOL, Inc.*,
  896 F.3d 1335 (Fed. Cir. 2018) .....................................................5, 13, 16

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
  66 F. Supp. 3d 829 (E.D. Tex. 2014) (Bryson, J.) .............................18

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  566 U.S. 66 (2012) ...................................................................................5

*Ohio Willow Wood Co. v. Alps S., LLC*,
  735 F.3d 1333 (Fed. Cir. 2013) ....................................................2, 8, 16

*OpenTV, Inc. v. Apple Inc.*,
  No. 5:15-cv-02008-EJD, 2016 WL 344845 (N.D. Cal. Jan. 28, 2016) ...................................................................................................22

*Reddy v. Litton Indus., Inc.*,
  912 F.2d 291 (9th Cir. 1990) .................................................................24

*Restoration Indus. Assoc. Inc. v. ThermaPure Inc.*,
  No. 2:13-cv-3169, Dkt. No. 73 (C.D. Cal. Oct. 10, 2013) ..................10

*Return Mail, Inc. v. United States Postal Serv.*,
  868 F.3d 1350 (Fed. Cir. 2017) .............................................................17

*SAP Am. v. Investpic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018) .....................................................*passim*

*SmarTEN LLC v. Samsung Elecs. Am., Inc.*,
  316 F. Supp. 3d 913 (E.D. Va. 2018) ......................................................8

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir.) ........................................................................... 23

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017) ............................................. 12, 14, 24

*Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*,
    916 F.3d 1363 (Fed. Cir. 2019) ........................................... 15, 17

**STATUTES**

35 U.S.C. § 101 ........................................................................ *passim*

**RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................... 2

Fed. R. Civ. P. 201 ................................................................... 8, 10

FENWICK & WEST LLP
ATTORNEYS AT LAW

SPOTIFY'S MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM

v

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The present motion is the culmination of a months-long effort by Data Scape to avoid the determination that the Asserted Patents—U.S. Patent Nos. 10,277,675 ("the '675 patent"), 9,712,614 ("the '614 patent"), and 9,380,112 ("the '112 patent")[1]—are invalid under 35 U.S.C. § 101.  Data Scape previously asserted the '614 and '112 patents, along with U.S. Patent Nos. 7,720,929 ("the '929 patent") and 7,617,537 ("the '537 patent"), against Spotify in a previous action (Case No. 2:18-cv-10653).  The Asserted Patents are all continuations of applications claiming priority to the '929 patent.  Spotify moved to dismiss the complaint pursuant to § 101, and Data Scape amended its complaint rather than respond to the merits of the motion.  After Spotify refiled its motion, Data Scape again dodged addressing the merits by dismissing the case without prejudice and simultaneously filing the present action.[2]

Although improper, Data Scape's effort to avoid the merits of this motion is understandable.  The patents fall far short of the requirements of § 101.  Indeed, the invalidity of the Asserted Patents has been determined by Judge Carter's May 17, 2019 order in *Data Scape Ltd. v. Western Digital Corp.*, No. 18-cv-2285 (C.D. Cal.) ("*Western Digital*"), wherein Judge Carter found the '929 patent, along with two others in the '929 patent family, invalid under § 101.  *See* Kohm Decl., Ex. A ("*Western Digital* Order").  The claims in the Asserted Patents contain no

---

[1] Copies of the Asserted Patents are attached to Data Scape's complaint as Dkt. No. 1-1 ('675 patent), Dkt. No. 1-2 ('112 patent), and Dkt. No. 1-3 ('614 patent).

[2] Data Scape's needless duplication of proceedings, its circumvention of Rule 15 and abuse of Rule 41, and its lack of Rule 11 basis to file the present action will be addressed by separate motion.  To the extent that Data Scape continues its pattern of delay by amending its complaint rather than responding to the present motion, Spotify reserves the right to add such duplication of proceedings as further grounds for its request for fees.

FENWICK & WEST LLP
ATTORNEYS AT LAW

materially different limitations from those invalidated in *Western Digital*.  Like the other '929 patent family members already held to be invalid by Judge Carter, the Asserted Patents are all directed to the abstract idea of selectively transferring and storing information.[3]

Moreover, the claims here, like those in *Western Digital*, add nothing inventive to transform the abstract idea into patent-eligible subject matter. Although they reference certain components used to perform the selective transferring and storing of information, the components are functional in nature— for example, storage for storing, an interface for communicating, and a processor for editing.  None of the claims contains any specific technological solution for *how* to perform these functions.  Indeed, to the extent that the specification describes any components at all, it describes only conventional computing components admittedly performing their well-understood, routine, and conventional activities.

Data Scape's Asserted Patents, like the '929 patent, thus fail the two-step test for patent eligibility set forth in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l.*, 134 S. Ct. 2347 (2014), and therefore are invalid under § 101.  In fact, given the *Western Digital* Order, Data Scape is collaterally estopped from relitigating the invalidity of the Asserted Patents.  *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013) ("If the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity, collateral estoppel applies.").  The Court thus should dismiss this case with prejudice pursuant to Rule 12(b)(6).

## II.   BACKGROUND

### A.    Data Scape's Assertion of Related, Invalid Patents

This is Data Scape's third complaint against Spotify on overlapping patents.

---

[3] Judge Carter characterized the abstract ideas as "transferring selected data from one storage device to another storage location." (*Western Digital* Order at 7.) Although different wording, the idea is the same as advanced by Spotify.

FENWICK & WEST LLP
ATTORNEYS AT LAW

Data Scape originally filed suit on four patents:  the '929, '614, '537, and '112 patents.  *See Data Scape Ltd. v. Spotify USA Inc.*, No. 2:18-cv-10653 (C.D. Cal.) ("Original Action").  As here, Spotify moved to dismiss under § 101.  (Original Action, Dkt. No. 18.)  Rather than respond to Spotify's motion, however, Data Scape amended its complaint.  (Original Action, Dkt. No. 19.)  Data Scape's amendment added conclusory allegations regarding the patent-eligibility of its inventions.  (*See* Original Action, Dkt. No. 19 at 3–5.)  Spotify again moved to dismiss because Data Scape's asserted patents are invalid under § 101.  (Original Action, Dkt. No. 22.)

While Spotify's motion was pending, Judge Carter issued an order in *Western Digital* finding all asserted claims of the '929 and '537 patents—both of which Data Scape had asserted against Spotify—invalid.  Judge Carter found claim 19 of the '929 patent representative of the claims in the patent family.  (*Western Digital* Order at 6–7.)  The patents, he concluded, "are directed to an abstract idea of data storage, transfer, and processing," ideas "much akin to the data selection, transfer, and storage functions of several patents invalidated by the Federal Circuit."  (*Id.* at 8–9.)  Judge Carter then determined that the patents "do not include an inventive concept," as they use only "generic functional language" and "do[] not claim any innovative means by which to selectively transfer data."  (*Id.* at 11–12.)  Accordingly, Judge Carter found the patents invalid and dismissed Data Scape's complaint against Western Digital with prejudice.  (*Id.* at 12.)

Judge Carter's *Western Digital* Order thus disposed of two of the four patents Data Scape had asserted against Spotify in the Original Action.  On May 20, the deadline for its response to Spotify's motion, Data Scape voluntarily dismissed the Original Action.  (Original Action, Dkt. No. 28.).  That same day it filed this new action, asserting two of the previously asserted patents (the '614 and '112 patents) as well as one new patent (the '675 patent).  (Dkt. No. 1.)  To date, Data Scape has not explained why it dismissed and then refiled this overlapping action, rather than

FENWICK & WEST LLP
ATTORNEYS AT LAW

simply responding to Spotify's pending motion in a timely manner or seeking amendment under Rule 15, as the Federal Rules of Civil Procedure contemplate. Data Scape also has not articulated any rhyme or reason behind its shifting sands assertion of related patents in a series of amended complaints.

**B.    The Asserted Patents, Like the Other Members of the '929 Patent Family, Are Directed to Selectively Transferring and Storing Information**

The Asserted Patents and the invalid '929 patent are members of a single family.  They share the same title, "Communication System and its Method and Communication Apparatus and its Method," bear the name of the same inventor, claim priority to the same date, and share a single, identical specification.  The shared specification discusses the now-archaic process of copying songs from CDs to music files on a computer and syncing those files to a portable device.  ('675 patent at 2:52–3:17.)[4]  The specification acknowledges that conventional technology enabled users to transfer all songs on a given playlist in a "batch operation" rather than transfer individual files "piece by piece."  (*See*, *e.g.*, *id*. at 2:45–56.)  The Asserted Patents purport to improve on this process—admittedly well-known at the time of the patents—by comparing the playlist on the computer to the list of songs on the user's device and copying only songs the user does not already have.  (*See, e.g.*, *id.* at 2:16–62, 28:1–12, 28:60–29:12.)

The claims of the '929 patent and the Asserted Patents, however, are divorced from this music-syncing system and seek to cover the significantly more abstract idea of selectively transferring and storing information.  Many claims allow for the transfer and storage of any sort of information, from any source, to any destination.  (*See, e.g.*, '675 patent cls. 1, 13, 14.)  Even the claims that are limited to a music-specific application simply specify that the information/data being

---

[4] For the Court's convenience, Spotify attaches the '929 and '537 patents that are the subject of Judge Carter's order in *Western Digital*.

FENWICK & WEST LLP
ATTORNEYS AT LAW

transferred is music data and, in some instances, limit the apparatus to generic, functionally described components—for example, "portable apparatus," "reproduction apparatus," and so on.  (*See*, *e.g.*, '112 patent cl. 1; '614 patent cl. 1.)

Copying only songs the user does not have as described in the specification—a perhaps useful result—is not a patentable invention after the Supreme Court's decision in *Alice*.  Much less so is the idea of selectively transferring and storing information.  *See Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335 (Fed. Cir. 2018); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607 (Fed. Cir. 2016); *Affinity Labs of Texas, LLC v. Amazon.com, Inc.*, 838 F.3d 1266 (Fed. Cir. 2016) *cert. denied*, 137 S. Ct. 1596 (2017).  Judge Carter already made this determination in *Western Digital*.  Because the current Asserted Patents are not materially different, this Court should do the same.

## III.   LEGAL STANDARD

"Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  35 U.S.C. § 101.  This provision contains "an important implicit exception": abstract ideas, laws of nature, and natural phenomena, which form the "basic tools of scientific and technological work," are not patentable.  *Alice*, 134 S. Ct. at 2354 (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)).  This case concerns the "abstract ideas" category, which embodies "the longstanding rule that '[a]n idea of itself is not patentable.'"  *Id.* at 2355 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).  The reason for this rule is important:  "[M]onopolization of [ideas] through the grant of a patent might tend to impede innovation more than it would tend to promote it."  *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012).  Accordingly, ideas belong to the "storehouse of knowledge . . . free to all . . . and reserved exclusively to none."  *Bilski v. Kappos*, 561 U.S. 593, 602 (2010) (citation omitted).

Fenwick & West LLP
Attorneys at Law

Whether a patent is impermissibly directed to an abstract idea can be determined on the pleadings. *See Berkheimer v. HP Inc*., 881 F.3d 1360, 1368 (Fed. Cir. 2018), *petition for cert. filed*, No. 18-415, 2018 WL 4819013 (U.S. Sept. 28, 2018).  To do so, courts use a two-step approach mandated by the Supreme Court.  *Alice*, 134 S. Ct. at 2355.  First, a court asks whether the claims are directed to a patent-ineligible abstract idea.  *Id.*  If the claimed advance is an abstract idea, the court must then decide whether the claims add an "inventive concept"—"an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to *significantly* more than a patent upon the [abstract idea] itself.'"  *Alice*, 134 S. Ct. 2355 (quoting *Mayo*, 566 U.S. at 73) (emphasis added).

Notably, to be eligible under Section 101, a patent must provide a "specific technical solution" to a "technological problem[]."  *Data Engine Techs. v. Google LLC*, 906 F.3d 999, 1008, 1012 (Fed. Cir. 2018).  And, importantly, that specific technical solution must be "captured in the claims."  *Berkheimer*, 881 F.3d at 1369; *see also Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1357 (Fed. Cir. 2018) (Moore, J., concurring in denial of reh'g en banc); *SAP Am. v. Investpic, LLC*, 898 F.3d 1161, 1166, 1169 (Fed. Cir. 2018).  As the Federal Circuit recently put it, "even a specification full of technical details about a physical invention may nonetheless conclude with claims that claim nothing more than the broad law or abstract idea underlying the claims."  *ChargePoint, Inc. v. SemaConnect, Inc.*, No. 2018-1739, slip op. at 14 (Fed. Cir. Mar. 28, 2019).  Such claims are ineligible for patenting.  *See id.* at 14–15.

## IV.   ARGUMENT

### A.   The Asserted Patents Claim an Abstract Idea and Nothing More

In determining whether claims are directed to an abstract idea, the court looks to the focus of the claims.  *See BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1286 (Fed. Cir. 2018) (at step 1, courts must inquire into the "focus of the claims").  Here, as Judge Carter held in *Western Digital*, the focus of the Asserted

FENWICK & WEST LLP
ATTORNEYS AT LAW

Patents is the abstract idea of selectively transferring and storing information.

**1.   Claim 1 of the '675 Patent is Nearly Identical to Claims Invalidated in *Western Digital* and Relates to the Same Abstract Idea**

Although Data Scape no longer asserts the '929 patent in this case, the claims of the '675 patent are nearly identical to the claims of the '929 patent—and are similarly invalid as a result.  Consider claim 1 of the '675 patent, reproduced here:

1.   A communication system including a first apparatus having a first hardware storage medium, and a second apparatus, said second apparatus comprising:

a second hardware storage medium configured to store management information of data to be transferred to said first storage medium;

a hardware interface configured to communicate data with said first apparatus;

a processor configured to:

detect whether said first apparatus and said second apparatus are connected;

select certain data to be transferred;

edit said management information based on said selection without regard to the connection of said first apparatus and said second apparatus;

compare said management information edited by said processor with management information of data stored in said first storage medium; and

transmit the selected data stored in said second apparatus to said first apparatus via said hardware interface based on said management information edited by said processor when said

FENWICK & WEST LLP
ATTORNEYS AT LAW

processor detects that said first apparatus and said second apparatus are connected based upon a result of the comparison. ('675 patent cl. 1.)  The only differences between this asserted claim and invalid claim 1 of the '929 patent are minor word substitutions (e.g., "hardware interface" or "processor" in place of "communicator" or "detector") and different placement of the limitation that data transfer occurs after the system "detects that said first apparatus and said second apparatus are connected."  (*Compare id.* ('675 patent) cl. 1 *with* '929 patent cl. 1.)  In fact, the Patent Office noted during prosecution that the claims of the '675 and '929 patents "are not patentably distinct from each other because the claims of the current application [the '675 patent claims] *encompass the same subject matter as the patented claims* [the '929 patent claims]."  (Kohm Decl., Ex. D at 4–5 (Office Action) (emphasis added).)  The Patent Office required the applicant to file a terminal disclaimer to overcome the rejection.  (*Id.*; Kohm Decl., Ex. E (terminal disclaimer filed to overcome rejection))[5]; *SmarTEN LLC v. Samsung Elecs. Am., Inc.*, 316 F. Supp. 3d 913, 920–21 (E.D. Va. 2018), *aff'd*, 753 Fed. Appx. 911 (Fed. Cir. 2019) (reasoning that one claim was representative of others, as other claims were admittedly "not patentably distinct from" the representative claim since the plaintiff filed terminal disclaimers).

Given the similarity of the claims, Data Scape is collaterally estopped from relitigating Judge Carter's conclusion in *Western Digital*.  *See Ohio Willow Wood*, 735 F.3d at 1342; *Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1382 (Fed. Cir. 2013) (regarding collateral estoppel, "[i]t is the issues litigated, not the specific claims around which the issues were framed, that is determinative").  Nevertheless, even if this Court is inclined to conduct its own analysis, it need not do so from scratch.  Judge Carter's articulation of the abstract idea in the '929

---

[5] The Court may take judicial notice of the prosecution histories of the Asserted Patents.  Fed. R. Civ. P. 201; *Data Engine Techs.*, 906 F.3d at 1008 n.2 (holding that relevant prosecution histories are "public records" properly considered at the pleading stage).

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  patent applies with equal force here.  As Judge Carter found, the patents "recite[]
2  the abstract idea of transferring selected data from one storage device to another
3  storage location."  *Western Digital* Order at 7; *see also id.* at 8 (characterizing the
4  abstract idea as "data storage, transfer, and processing").

5       Federal Circuit precedent confirms that the abstract idea is selectively
6  transferring and storing information.  Most of the elements recited in claim 1 of the
7  '675 patent predated the claimed invention and so cannot be the focus of the claims.
8  *See Affinity Labs of Texas, LLC v. DirecTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir.
9  2016) (the focus is the "claimed advance over the prior art").  The shared
10  specification explains that the first apparatus is a "portable recording and playback
11  apparatus" and the second apparatus is a "music server."  ('675 patent at 4:31–36
12  (music server), 6:20–27 (portable device).)  Both apparatuses are made up of
13  "generic" computer components, such as a hard disk, RAM, and a CPU, connected
14  together as they would be in "an ordinary personal computer."  (*Id.* at 6:40–46,
15  8:66–9:5, 13:43–51.)  And both apparatuses predated the claimed invention.  (*Id.* at
16  2:16–39.)  Similarly, creating a list of music—the claimed "management
17  information"—and transferring it to the device "in a batch operation" were known
18  before the claimed invention.  (*Id.* at 23:1–56, 2:52–56.)

19       The only aspect of the claim that is even purportedly new is *selectively*
20  transferring information to the first apparatus based on "compar[ing] said
21  management information" between the two apparatuses.  (*See* '675 patent cl. 1.)
22  This selective transfer and storage of information is the focus of the claims.  *See*
23  *Affinity Labs of Texas*, 838 F.3d at 1257.  Indeed, all of the conventional computer
24  components described in the specification are used in their conventional manner for
25  this purpose.  That focus is not the sort of specific technological solution required
26  by *Alice* and its progeny, but an abstract idea.

27       There is no dispute regarding this abstract idea.  Data Scape itself
28  characterized the '929 patent family in the same way in its February 28, 2019

complaint filed with the International Trade Commission:

> The '929 patent generally relates to systems and methods for *communicating selected pieces of data* stored in one apparatus, *e.g.*, a server, to another apparatus, *e.g.*, a mobile phone, tablet, or laptop.  The patent describes the use of management information stored in one apparatus, which can be edited and controlled so that *only select data is transferred to the second apparatus*.

(Kohm Decl., Ex. F ("ITC Complaint") at 7 (emphases added).)[6]  In addition to this "general[]" description, Data Scape also provided a "more detail[ed]" one:

> In more detail, the '929 patent is directed to a communication system that includes a *first apparatus with a first storage medium* and a *second apparatus which transmits data to the first apparatus*.  The second apparatus includes a second storage medium, which contains the management information which can be edited, as well as means for *transferring data to the first apparatus pursuant to the edited management information*.

(*Id.* (emphases added and citations omitted).)

Whether the Court looks to Data Scape's "general[]" characterizations or its "more detail[ed]" ones, the result is the same.  In Data Scape's words, the '929 patent, which is nearly identical to the '675 patent and is representative of the family as a whole, is directed to the abstract idea of "communicating selected pieces of data" from one apparatus to another—i.e., selectively transferring and

---

[6] The Court should take judicial notice of Data Scape's characterization of its related patents to the ITC, as these characterizations are public information and their accuracy cannot reasonably be questioned.  Fed. R. Civ. P. 201; *see Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 996 (9th Cir. 2009) ("[W]e may take judicial notice of proceedings in other courts that relate directly to matters at issue."); *see also, e.g.*, *Restoration Indus. Assoc. Inc. v. ThermaPure Inc.*, No. 2:13-cv-3169, Dkt. No. 73 at 1 (C.D. Cal. Oct. 10, 2013) (taking judicial notice of exhibits to motion to dismiss, including a party's pleadings from other matters).

FENWICK & WEST LLP
ATTORNEYS AT LAW

storing information.  (*Id.* at 7); *Affinity Labs of Texas*, 838 F.3d at 1257.

## 2.   Claim 1 of the '675 Patent is Representative

Claim 1 can be treated as representative because all of the other claims of the Asserted Patents are "substantially similar and linked to the same abstract idea" of selectively transferring and storing information.  *See Content Extraction and Transmission, LLC, v. Wells Fargo Bank*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). For example, the key "comparison" limitation of the '675 patent exists in the '614 and '112 patents as nearly identical "compar[ing]" and "controlling" steps.  ('614 patent at 30:22–34; '112 patent at 29:24–33.)  All of the Asserted Patents recite generic components described solely by their conventional functions:  "a storage medium" configured to store information, a generic "interface" configured to communicate information, a processor configured to detect information, or "circuitry configured to perform . . . transmission . . . downloading . . . storage . . . display," and the like.  (*See, e.g.*, '675 patent at 30:2–25.)  And, although the claims of the '614 and '112 patents refer to a particular type of information—"musical content data"—an "abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment."  *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015); ('614 patent cls. 1, 12, 20; '112 patent cls. 1, 9, 17).

Further, although the '112 and '614 patents use slightly different wording to describe the "management information" of the '675 patent, the abstract idea remains the same.  For example, the '112 patent refers to "list[s] of musical content data," and the '614 patent refers to "program list[s] associated with the musical content data."  ('112 patent at 29:15–16; '614 patent at 29:62–64.)  These terms merely refer to lists of information used in the selective transfer and storage of information from one device to another.  The '112 and '614 patents also take the claim to its logical conclusion that the apparatus will "control playback" of the musical content data.  ('112 patent at 29:34–41; '614 patent at 30:1–8.)  But as the

FENWICK & WEST LLP
ATTORNEYS AT LAW

specification describes, the notion of playback was well known in the art and does not render claim 1 of the '675 patent any less representative of the abstract idea. (*E.g.*, '675 patent at 1:37–42, 1:49–52); *see also Affinity Labs of Texas*, 838 F.3d at 1257.

The same overarching similarities between claims led Judge Carter to find claim 19 of the '929 patent representative in *Western Digital*. Here, as in *Western Digital*, claim 1 of the '675 patent "recites the abstract idea of transferring selected data from one storage device to another storage location, encapsulating this abstract idea as it runs through the Asserted Patents." *Western Digital* Order at 7.

Dependent claims generally are directed to the same abstract idea as the independent claim from which they derive. *See BSG Tech*, 899 F.3d at 1287 n.1. The dependent claims here, for example, add only limitations like displaying certain information on a screen or transferring a certain type of data. (*See, e.g.*, '675 patent cls. 2, 5.) Such limitations do not alter the abstract idea to which the claim is directed. *See SAP*, 898 F.3d at 1164 n.1 (explaining that "add[ing] details to the abstract ideas in the claims" does not alter the abstract-idea analysis).

### 3.   Courts Routinely Invalidate Patents Claiming Similar Abstract Ideas

None of the claims of the Asserted Patents is meaningfully different than the related claims ruled invalid in *Western Digital*. The claims also are not meaningfully different from abstract claims ruled invalid in a series of Federal Circuit cases rejecting functional claims directed to no more than a mere result: *SAP*, *TLI*, *Affinity*, and *Two-Way Media*.

In *SAP*, for example, the claims involved "storing" information, "selecting" information, "generating" analysis of it, and "providing" that analysis to the user. 898 F.3d at 1164–65 (quoting U.S. Patent No. 6,349,291 cls. 1, 11, 22). The Federal Circuit held that "selecting certain information, analyzing it . . ., and reporting or displaying the results"—"[t]hat is all abstract." *Id.* at 1167. Indeed,

FENWICK & WEST LLP
ATTORNEYS AT LAW

the Federal Circuit has repeatedly found that claims reciting selecting, analyzing, and transferring information, without more, are directed to abstract ideas. *See, e.g.*, *Interval Licensing*, 896 F.3d at 1344–45 (collecting cases).

In *TLI*, the Federal Circuit found claims directed to the classification and storage of information impermissibly abstract where they did not disclose "a specific improvement to computer functionality," but instead recited "use of conventional or generic technology in a nascent but well-known environment." *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611–12 (Fed. Cir. 2016). The patent sought to improve archiving of digital images for faster and easier access to the archived information. *Id.* at 612. But instead of inventing a specific device or solution for doing so, the patent recited "a generic environment in which to carry out the abstract idea of classifying and storing digital images in an organized manner." *Id.* at 611. Like Data Scape's Asserted Patents, which claim generic apparatuses and storage media, the patent at issue in *TLI* claimed a generic "telephone unit . . . merely [as] a conduit for the abstract idea." *Id.* at 612.

Similarly, in *Affinity*, the Federal Circuit invalidated claims that were much more detailed than those in Data Scape's patents. The patent there claimed a "network based media managing system" for delivering streaming media from a "library of content" to a "handheld wireless device." 838 F.3d at 1267–68 (quoting U.S. Patent No. 8,688,085 cl. 14). The Federal Circuit found the claims to be directed to the abstract idea of "streaming user-selected content to a portable device." *Affinity Labs of Tex.*, 838 F.3d at 1269, 1272. They too "d[id] no more than describe a desired function or outcome, without providing any limiting detail that confine[d] the claim to a particular solution to an identified problem." *Id.* The tangible features of the claimed system, such as "network streaming and a customized user interface," were "described and claimed generically rather than with the specificity necessary to show how those components provide[d] a concrete solution to the problem addressed by the patent." *Id.* at 1271.

FENWICK & WEST LLP
ATTORNEYS AT LAW

In *Two-Way Media v. Comcast Cable Communications, LLC*, the Federal Circuit once again reiterated that courts must "look to whether the claims in the patent focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." 874 F.3d 1329, 1337 (Fed. Cir. 2017). It affirmed a finding that patents related to "a system for streaming audio/visual data over a communications system like the internet" were invalid under Section 101. *Id.* at 1332. The court reasoned that the claims required "functional results" such as converting, routing, controlling, monitoring, and accumulating records, but failed to "sufficiently describe how to achieve these results in a non-abstract way." *Id.* at 1337–38.

Judge Bryson's recent application of this well-established precedent in *Epic IP* is particularly instructive. Judge Bryson summarized the Federal Circuit's authority invalidating "claim[s that are] purely functional in nature rather than containing the specificity necessary to recite how the claimed function is achieved." *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 738 (D. Del. 2018) (collecting cases). Applying that precedent, Judge Bryson found claims directed to "the idea of a chat session separate from the original website" a "disembodied concept" where the claims recited a functional objective and generic components, rather than a *specific* mechanism or solution to implement the idea. *Id.* at 740.

Like the patents described above, the claims in the Asserted Patents merely recite generic components described only by their functions. The "hardware interface," for example, is simply whatever can "communicate data with [the] first apparatus." (*See, e.g.*, '675 patent at 30:8–9.) Likewise, the "processor" is a black box that just "detect[s] whether [the] first apparatus and [the] second apparatus are connected." (*Id.* at 30:10–12.) Even the key comparing and transmitting step is described as a bald result: a generic "processor" configured to "compare . . . management information [on one apparatus] . . . with management information of data stored [on the other apparatus]" and to transmit said data "based upon a result

FENWICK & WEST LLP
ATTORNEYS AT LAW

of the comparison." (*Id.* at 30:10–25.) The claims are agnostic as to *how* to structure "management information" so a processor can compare two sets of information, or *how* it determines what information to transfer over. *Cf. Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1368 (Fed. Cir. 2019) ("Neither the '251 patent, nor its claims, explains *how* the drivers do the conversion that UFRF points to."); *Glasswall Sols. Ltd. v. Clearswift Ltd.*, No. 2018-1407, 2018 WL 6720014, at *1 (Fed. Cir. Dec. 20, 2018) (criticizing a patent for failing repeatedly "to claim *how*" its various steps were performed); *Amazon.com*, 838 F.3d at 1269 (faulting claims for providing no "limiting detail that confines the claim to a particular solution to an identified problem").

The shared specification, too, describes this step only in passive, functional terms: "if there is a piece of musical data in common . . . [it] can be omitted." ('675 patent at 28:60–65.) And in any event, it is the *claims* that must contain a specific technological solution. *Berkheimer*, 881 F.3d at 1369; *ChargePoint*, No. 2018-1739, slip op. at 14. Here, they do not. Instead, they are drawn so broadly that they preempt "all applications" of the abstract idea. *Cf. Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1374–75 (Fed. Cir. 2016). Indeed, Data Scape accuses a vast array of services for sharing and synching information of *all* types. Its claims fail at *Alice* step one.

## B. The Asserted Patents Add No Inventive Concept to the Abstract Idea

The Asserted Patents also fail the second step of the *Alice* analysis, which "looks more precisely at what the claim elements add." *SAP Am.*, 898 F.3d at 1168. These claims add only well-understood, routine, and conventional activity. They lack the inventive concept necessary to become patent-eligible. *See id.*; *Elec. Power Grp. v. Alsom S.A.*, 830 F.3d 1350, 1354–55 (Fed. Cir. 2016); *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1244 (Fed. Cir. 2016); *Alice*, 134 S. Ct. at 2360.

Further, as shown below, the Asserted Patent claims lack material differences

FENWICK & WEST LLP
ATTORNEYS AT LAW

from those found invalid in *Western Digital*.  Data Scape is thus collaterally estopped from relitigating the issue.  *Ohio Willow Wood*, 735 F.3d at 1342.

### 1.    The Independent Claims of the '675 Patent

In claim 1 of the '675 patent, both "apparatus[es]" are merely collections of "ordinary personal computer" components connected in ordinary ways.  ('675 patent at 8:66–9:5, 13:43–51.)  The claimed "processor" to compare data is expressly a generic CPU, and the various storage media are expressly generic hard drives or flash storage.  (*Id.* at 9:4–5, 4:59–60, 6:20–27.)  None of that is inventive. *Elec. Power Grp.*, 830 F.3d at 1352; *Interval Licensing*, 896 F.3d at 1346.

The other components of the claim are "expressed through functional terms lacking in specificity or through generic structures described at a very high level of generality," and so are also not inventive.  *See Epic IP*, 2018 WL 6107029, at *12; *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 615 (Fed. Cir. 2016); ('675 patent cl. 1).  The "hardware interface," for example, is simply whatever can "communicate data" to the first apparatus; the specification describes it as a black-box "interface" that "allows musical data to be exchanged."  ('675 patent at 30:8–9, 12:39–51.)  Similarly, the "processor" is configured to "detect" whether the two apparatuses are connected; the specification elaborates only that "there are a variety of conceivable methods" to accomplish that detection and provides one "typical" (conventional) method.  (*Id.* at 30:10, 27:11–16.)  The same "processor" also performs unspecified editing of management information with only a negative limitation:  the editing is done "without regard to the connection" of the two apparatuses.  (*Id.* at 30:14–16.)  Stripping away these functional and generic limitations, all that remains is the original abstract idea—selectively transferring and storing information.[7]  (*See id.* at 30:17–25.)  But critically, the inventive

---

[7] The remaining independent claims of the '675 patent are nearly identical to claim 1, and differ only in terms of the "draftsman's art."  (*See* '675 patent cls. 13, 14.); *cf. Alice*, 134 S. Ct. at 2359.  Neither claim provides an inventive concept.

FENWICK & WEST LLP
ATTORNEYS AT LAW

concept cannot be the abstract idea itself.  *Aatrix*, 890 F.3d at 1359 (Moore, J.); *ChargePoint*, No. 2018-1739, slip op. at 23–24.

Further confirming that the claim lacks inventive concept, the specification describes that users were previously able to selectively transfer and store information *manually*.  The Background of the Invention states that music could be (1) added to and stored on a music server; (2) selected "to be transferred piece by piece"; and (3) transferred.  ('675 patent at 2:45–51.)  The automation of those conventional, manual steps to make them less "cumbersome," using conventional computer processes, is not an inventive concept.  *Univ. of Fla. Research Found.*, 916 F.3d at 1367–68 (characterizing patent seeking "to automate 'pen and paper methodologies' to conserve human resources and minimize errors" as "a quintessential 'do it on a computer' patent," and finding no inventive concept); ('675 patent at 2:45–51).

"[P]reemption is the underlying concern that drives the § 101 analysis." *Return Mail, Inc. v. United States Postal Serv.*, 868 F.3d 1350, 1369 (Fed. Cir. 2017), *rev'd on other grounds*, 139 S. Ct. 1853 (2019); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333–34 (Fed. Cir. 2012) (finding claims invalid "as being directed to an abstract idea preemptive of a fundamental concept or idea that would foreclose innovation in this area").  Here, the claims attempt to preempt the idea of selectively transferring and storing information, but lack inventive concept to transform this abstract idea into a patent-eligible one.  They are thus invalid.

### 2.     The Independent Claims of the '112 Patent

Claim 1 of the '112 patent limits the idea of the '675 patent (and the '929 patent) to "musical content data" and adds that "list[s] of musical content data" (i.e., playlists) can be "played back as a collection."  (*See* '112 patent at 29:15–16, 29:34–37.)  But limiting "the claims to a particular field of information . . . does not move the claims out of the realm of abstract ideas."  *SAP*, 898 F.3d at 1169.  More fundamentally, if "a functionally described display of information" is not inventive,

FENWICK & WEST LLP
ATTORNEYS AT LAW

neither is a functionally described playback of information.  *Cf. DirecTV*, 838 F.3d at 1263.  In any event, the specification admits that playlists had long been used "to organize numerous pieces of data stored in the music server."  ('112 patent at 2:52–53.)  Similarly, as noted above, the limitation regarding "control[ling] playback" of the musical content data is admittedly not inventive.  ('112 patent at 29:34–41; *see also Western Digital* Order at 8, 11–12 (citing authority finding that displaying data is not inventive).)  The remaining independent claims of the '112 patent are merely apparatus and medium analogues of claim 1.  (*See* '112 patent cls. 9, 17.)

### 3.    The Independent Claims of the '614 Patent

Claim 1 of the '614 patent essentially restates the elements of the '112 patent in more verbose terms.  ('614 patent at 29:61–30:34.)  This includes, for example, replacing the "list[s] of musical content data" of the '112 patent with "program lists associated with the musical content data."  ('614 patent at 29:63–64.)  However, "dress[ing] up" the claim "in the argot of invention" does not make it more inventive.  *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 845 (E.D. Tex. 2014) (Bryson, J.).  And the other independent claims of the '614 patent are method and medium analogues of claim 1.  (*See* '614 patent cls. 12, 20.)

### C.    The Dependent Claims of the Asserted Patents are also Invalid

The dependent claims of the Asserted Patents are no more inventive than the independent claims.  The following table collects similar claims and explains why:

| Claims | Lack of Inventive Concept |
| --- | --- |
| '675 patent cls. 2, 15; '112 patent cls. 5, 13, 21. | These claims limit the information to compressed data, potentially in AAC, ATRAC, or MP3 format.  But these are conventional; the Asserted Patents do not purport to describe a new form of compressed data.  Moreover, "merely selecting information, by content or by source," does not add an inventive concept.  *Elec. Power Grp.*, 830 F.3d at 1355. |

FENWICK & WEST LLP
ATTORNEYS AT LAW

| Claims | Lack of Inventive Concept |
|---|---|
| | Similar claims in the '929 and '537 patents have been found invalid. *See* '929 patent cls. 2, 11, 29, 36, 45, 53, 60, 77; '537 patent cls. 4, 5, 46–47. |
| '675 patent cls. 3, 7, 10–11, 16, 20, 23–24; '614 patent cls. 9–10. | These claims merely "sit[e] the ineligible concept in a particular technological environment." *Cf. Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1349 (Fed. Cir. 2015). For example, they provide that an apparatus might be portable or a portable audio player, that it might have a particular type of storage medium or a particular relative capacity, or that input is acquired in a particular way. None of that preexisting technology supplies an inventive concept to the Asserted Patents. *See id.*; *Elec. Power Grp.*, 830 F.3d at 1354. Similar claims in the '929 and '537 patents have been found invalid. *See* '929 patent cls. 3, 8–9, 12, 17, 18, 30, 33–34, 37–38, 43, 46–47, 61, 66, 78–80; '537 patent cls. 2, 8, 18, 27, 36, 44, 50. |
| '675 patent cls. 5–6, 8–9, 12, 18–19, 21–22, 25; '614 patent cls. 2–3, 6–7, 13–14, 18–19, 21–22, 26–27; '112 patent cls. 3, 6, 8, 11, 14, 16, 19, 22, 24. | These claims add "token postsolution components" or "insignificant postsolution activity" to the idea. *Cf. Bilski*, 561 U.S. at 612; *Apple*, 842 F.3d at 1244. For example, <br>• some add ripping audio CDs or using TOC information from an audio CD to get information about the CD (*e.g.*, '614 patent cls. 6, 18; '112 patent cl. 6); <br>• others display what information is available and what is being transferred, possibly allowing the user to edit the latter (*e.g.*, '614 patent cls. 7, 19; '112 patent cl. 8); |

FENWICK & WEST LLP
ATTORNEYS AT LAW

| Claims | Lack of Inventive Concept |
|---|---|
| | • others add token music-downloading steps (*e.g.*, '614 patent cls. 2, 3, 13, 14); |
| | • others add the basic capability to compare the size of the data sought to be transferred to the available space (*e.g.*, '675 patent cls. 8–9, 21–22); |
| | • others add the token limitation that data transmission is done in a batch operation (*e.g.*, '675 patent cl. 12); and |
| | • others add the basic capability to erase information on the device, possibly because it is too full (*e.g.*, '112 patent cls. 3, 11). |
| | The specification fails to describe any specific technological solution for *how* these insignificant steps are carried out such that they might provide an inventive concept.  Similar claims in the '929 and '537 patents have been found invalid.  *See* '929 patent cls. 4, 6–7, 13, 15, 16, 20, 22–23, 25, 27, 28, 31–32, 39, 41–42, 48, 50–51, 54, 56, 57, 62, 64–65, 68, 70–71, 73, 75–76; '537 patent cls. 3, 6, 7, 11, 13–14, 16, 17, 21, 23–24, 26, 30, 32–33, 35, 39, 41–42, 45, 48–49, 53, 55–56. |
| '675 patent cls. 4, 17; '112 patent cls. 4, 12, 20. | These claims add either or both of two additional limitations: (1) deleting information, a basic capability of any computing device; and (2) operating only when the apparatus recognizes the ID of the device, a basic comparison operation.  As described above, these limitations do not save the claims.  There can be no doubt that deleting information is not an inventive concept attributable to the Asserted Patents.  And, |

| Claims | Lack of Inventive Concept |
|---|---|
| | with respect to the recognition aspect of the claims, "[t]he practice of controlling access to information by verifying credentials . . . is neither novel nor specific to" the information-transfer functionality at issue here. *OpenTV, Inc. v. Apple Inc.*, No. 5:15-cv-02008-EJD, 2016 WL 344845, at *5–6 (N.D. Cal. Jan. 28, 2016) (collecting cases and finding, among other things, "verifying credentials" to be well-known).  Similar claims in the '929 patent have been found invalid.  *See* '929 patent cls. 5, 14, 21, 26, 40, 49, 55, 63, 69, 74. |
| '614 patent cls. 8, 11; '112 patent cls. 2, 7, 10, 15, 18, 23. | These claims add limitations that uniquely associate playlists with devices using IDs.  Associating a list with something having an ID is a common, conventional practice.  For example, schools maintain lists of students uniquely associated with each classroom (e.g., the list of students in kindergarten, Classroom 4); airlines maintain lists/manifests of passengers for a given flight designated by flight ID; and libraries have long maintained lists of books checked out by a given person, which are tracked/associated with a library card number assigned to the person.  Moreover, this additional limitation is simply another "routine comparison" step that cannot make an idea inventive.  *See Genetic Techs.*, 818 F.3d at 1378.  And, as described above, the specification fails to describe any specific technological solution for *how* playlists are associated with devices such that these limitations would provide an inventive concept.  Similar |

FENWICK & WEST LLP
ATTORNEYS AT LAW

| Claims | Lack of Inventive Concept |
|---|---|
| | claims in the '537 patent have been found invalid. *See* '537 patent cls. 9–10, 19–20, 28–29, 37–38, 51–52. |
| '614 patent cls. 4–5, 15–17, 23–25; '112 patent cl. 25. | These claims add three limitations: (1) editing playlists regardless of connection status, (2) transferring information when the connection is established, and (3) controlling the transfer based on the comparison between the devices. As described above, none of these limitations is inventive. For example, deleting and controlling access to information are conventional data-processing and data transfer steps. *Burnett v. Panasonic Corp.*, 741 Fed. Appx. 777, 781 (Fed. Cir. 2018); *OpenTV*, 2016 WL 344845, at *5–6. As for the limitations regarding transfer when a connection is established, this is not only conventional, but also *necessary*; information transfer between two apparatuses requires a connection. |

Thus, none of the claims of the Asserted Patents is eligible for patenting.

**D.    Data Scape's Attempt to Allege Facts to Overcome Section 101 Fails**

Data Scape's original complaint did not include any factual allegations that the claims of the Asserted Claims contain inventive concepts. (*See generally*, Original Action, Dkt. No. 1.) Data Scape subsequently added allegations calculated to survive a § 101 motion.[8] (Dkt. No. 1 ¶¶ 8–11, 30–33, 51–54.) These allegations

---

[8] Data Scape also adds allegations about what the Asserted Patents are "directed to." (Dkt. No. 1 ¶¶ 8, 30, 51.) Those allegations are irrelevant because what a claim might be "directed to" is part of the eligibility analysis at step one of *Alice*, and step one is purely a legal analysis. *ChargePoint*, No. 2018-1739, slip op. at 6–8; *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018) ("While the ultimate determination of eligibility under § 101 is a

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   cannot save Data Scape's claims.  Indeed, they serve only to underscore that the

2   claims here are ineligible for patenting.

3        Under both Federal Circuit and Ninth Circuit law, a court ruling on a motion

4   to dismiss need not accept as true allegations that contradict exhibits attached to the

5   complaint or matters properly subject to judicial notice—specifically, in a patent

6   case, the specifications and claims of the asserted patents.  *Aatrix Software, Inc. v.*

7   *Green Shades Software, Inc.*, 890 F.3d 1354, 1358 (Fed. Cir. 2018) (Moore, J.,

8   concurring in denial of reh'g en banc); *Sprewell v. Golden State Warriors*, 266 F.3d

9   979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir.

10  2001).  Nor can a plaintiff immunize its patents from adjudication on a motion to

11  dismiss by making "conclusory legal assertions" that they are inventive and novel.

12  *Glasswall Sols. Ltd. v. Clearswift Ltd.*, No. 18-1407 (Fed. Cir. Dec. 20, 2018), slip

13  op. at 5 (non-precedential); *Epic IP*, 2018 WL 6107029, at *14.

14       Many of Data Scape's allegations are simply irrelevant to the issue of

15  whether its claims include an inventive concept.  For example, Data Scape

16  characterizes the patents as reciting "problems . . . specific to the technological

17  process of selective digital-data transfer."  (Dkt. No. 1 ¶¶ 9, 31, 52.)  But the

18  problems recited in the specification are not those the patents purport to solve.  For

19  example, Data Scape adverts to problems using "optical disks to accomplish this

20  process."  (*Id.*)  But the patents acknowledge that that problem had been solved in

21  the background art.  ('675 patent at 2:32–44.)  And in any event, the patents *claim*

22  only "transmit[ting] data," not any particular mechanism for transmitting data, and

23  the specification describes the mechanism only as taking place over a generic

24  "electrical[] connect[ion]."  (*Id.* at 30:20–25, 12:39–51, 24:29–40.)

25       Even when Data Scape does correctly identify the problem the patents

26

27  question of law, . . . [w]hether the claim elements or the claimed combination are
    well-understood, routine, conventional [*i.e.*, the step-two analysis] is a question of

28  fact.").

purport to solve—"selectively synchroniz[ing] select digital content data," notably similar to Spotify's statement of the abstract idea above—it then asserts that the solution was an "unconventional server" that is anything but. (*See* Dkt. No. 1 ¶¶ 9, 31, 52.)  The server Data Scape depicts is made up almost entirely of components that the specification admits were conventional, such as a CPU, ROM, RAM, flash memory, an LCD display and driver, and so on. (*See id.*; *see, e.g.*, '675 patent at Fig. 2, 8:66–9:40, 4:33–36.)  And although Data Scape claims its patents solved the identified problem with "circuitry [designed] to compare certain digital management information," none of the patents contains any such circuitry, let alone claims it. (*Cf.* Dkt. No. 1 ¶¶ 9–10, 31–32, 52–53.)  Indeed, as explained above, the claims disclose nothing about how to structure "management information" so a generic processor can compare two sets of managed data. (*See, e.g.*, '675 patent cl. 1.)[9]  They simply claim it as a *fait accompli*.

The remainder of Data Scape's new allegations simply reiterate the elements of the claims and assert that they perform the abstract idea. (*See* Dkt. No. 1 ¶¶ 10–11, 32–33, 53–54.)  But neither paraphrasing the claims nor alleging that the abstract idea is itself the inventive concept is sufficient to overcome a motion to dismiss. *ChargePoint*, No. 2018-1739, slip op. at 23.  Even though it was fully on notice of Spotify's arguments under § 101, Data Scape could not allege any more than that.  Thus, this Court should dismiss Data Scape's complaint with prejudice. *See id.* at 25–28; *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990).

## V.  CONCLUSION

The Asserted Patents' claims are all directed to the abstract idea of selectively transferring and storing information.  They add no inventive concept to that idea.  They are thus ineligible for patenting.  And with no eligible patent

---

[9] Even if those details can be found in the specification, "the specification cannot be used to import details from the specification if those details are not claimed." *ChargePoint*, No. 2018-1739, slip op. at 14; *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338–39 (Fed. Cir. 2017).

FENWICK & WEST LLP
ATTORNEYS AT LAW

claims, Data Scape's complaint fails to state a claim upon which relief can be granted.  This Court should dismiss it with prejudice.

Dated: July 9, 2019

Respectfully submitted,

FENWICK & WEST LLP

By:  _/s/ Bryan A. Kohm_
Bryan A. Kohm

Attorneys for Defendant
SPOTIFY USA INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW